IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-00188-PAB-GPG

NORTH MILL STREET, LLC,

    Plaintiff,

v.

THE CITY OF ASPEN and
THE ASPEN CITY COUNCIL,

    Defendants.

---

# ORDER

---

This matter is before the Court on defendants' Motion to Dismiss [Docket No. 23]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

This case arises out of a land use dispute. Defendant Aspen City Council (the "City Council") is the final policymaking authority for defendant City of Aspen ("Aspen"), a Colorado Home Rule Municipality. Docket No. 19 at 1-2, ¶¶ 2-3. As relevant here, the City Council has the authority to establish zoning ordinances and to approve or deny applications to rezone parcels of land. *Cf. id*. at 7, ¶ 33. The City Council also has the authority to approve or deny an application for planned development review ("PD review"), a process which "allows for site-specific development . . . in circumstances that warrant variation from the standard permitted zone district land uses." Docket No. 23-1 at 1-2, ¶ 2; *see also* City of Aspen Municipal Code § 26.445.040.

Plaintiff North Mill Street, LLC owns real property, commonly known as the "Mill Street Plaza," located in Aspen. Docket No. 19 at 1, ¶ 1. The Mill Street Plaza is located within the Service Commercial Industrial ("SCI") zoning district. *Id*. at 3, ¶ 9. At the time plaintiff's predecessor-in-interest, North Mill Street Investors ("NMSI"), purchased the Mill Street Plaza in 2007, the SCI zoning district allowed free-market residential units as a conditional or ancillary use. *Id*. at 2-3, ¶¶ 7, 9.

On January 23, 2017, the City Council adopted Ordinance 29. *Id*. at 5, ¶ 25. Ordinance 29 amended the Aspen Land Use Code to, as relevant here, remove free-market residential units as a permitted conditional use within the SCI zoning district. *Id*., ¶ 26.

On July 12, 2017, NMSI filed a rezoning application, requesting that the City Council rezone the Mill Street Plaza to the Mixed Use zoning district, which would permit the construction of free-market residential units. *Id*. at 5-6, ¶ 28. On June 14, 2018, plaintiff purchased the Mill Street Plaza from NMSI. *Id*. at 6, ¶ 29. As part of the transaction, NMSI assigned to plaintiff all of its rights, interests, and claims pertaining to the Mill Street Plaza. *Id*. On April 22, 2019, the City Council unanimously voted to deny the rezoning application. *Id*. at 6-7, ¶ 32.

On January 22, 2019, plaintiff filed this lawsuit. Docket No. 1. In the operative complaint, filed on May 8, 2019, plaintiff alleges that "[w]ithout the opportunity to sell free market residential units . . . future redevelopment of the Mill Street Plaza is not economically viable." Docket No. 19 at 9-10, ¶ 46. Because Ordinance 29 "impair[s] the ability of [plaintiff] to successfully develop the Mill Street Plaza," plaintiff alleges that

Ordinance 29 "constitutes a regulatory taking" of plaintiff's interests. *Id*. at 10, ¶ 47. Plaintiff further alleges that defendants have failed to offer it any compensation for the regulatory taking. *Id*., ¶ 48.

In the operative complaint, plaintiff brings five claims against defendants: (1) a claim for a declaratory judgment pursuant to 28 U.S.C. § 2201 that Ordinance 29 is invalid and unenforceable, (2-4) three constitutional claims pursuant to 42 U.S.C. § 1983 for violations of substantive due process under the Due Process Clause of the Fourteenth Amendment, equal protection under the Equal Protection Clause of the Fourteenth Amendment, and inverse condemnation under the Takings Clause of the Fifth Amendment, and (5) a state law claim for "reverse spot zoning and/or piecemeal downzoning." *Id*. at 11-18, ¶¶ 54-96. Plaintiff also requests that the Court permanently enjoin defendants from enforcing Ordinance 29. *Id*. at 18-19, ¶¶ 97-110.

On July 12, 2019, defendants filed this motion to dismiss the complaint in its entirety. Docket No. 23. Defendants argue that plaintiff's claims are not ripe for review; thus, the Court lacks subject matter jurisdiction and dismissal is appropriate pursuant to Fed. R. Civ. P. 12(b)(1). *Id*. at 4-10. In the alternative, defendants argue that plaintiff fails to state any viable claims for relief under 42 U.S.C. § 1983. *Id*.

## II. LEGAL STANDARD

A motion under Fed. R. Civ. P. 12(b)(1) is a request for the Court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A plaintiff bears the burden of establishing that the Court has jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). When the Court lacks subject matter

jurisdiction over a claim for relief, dismissal is proper under Rule 12(b)(1). *See Jackson v. City and Cty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556 at *1 (D. Colo. Sept. 24, 2012).

Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). The court may review materials outside the pleadings without converting the Rule 12(b)(1) motion to dismiss into a motion for summary judgment. *Davis ex rel. Davis v. U.S.*, 343 F.3d 1282, 1296 (10th Cir. 2003).

## III. ANALYSIS

Defendants move to dismiss plaintiff's claims on the basis that they are not ripe for review. Docket No. 23 at 4-10.

The question of whether a claim is ripe for review is a challenge to the Court's subject matter jurisdiction. *SK Finance SA v. La Plata Cty., Bd. of Cty. Com'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997). A regulatory takings claim is not ripe "until the government entity charged with implementing [zoning] regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S.

4

172, 186-87 (1985).[1]  This finality requirement "seeks to ensure that the issues and the factual components of the dispute are sufficiently fleshed out to permit meaningful judicial review."  *Bateman v. City of West Bountiful*, 89 F.3d 704, 708 (10th Cir. 1996).  "A 'final decision' requires not only an initial rejection of a particular development proposal, but a definitive action by local authorities indicating with some specificity what level of development will be permitted on the property in question."  *SK Finance*, 126 F.3d at 1276.  "The ripeness requirement . . . applies to due process and equal protection claims that rest upon the same facts as a concomitant takings claim."  *Bateman*, 89 F.3d at 709.

Defendants argue that plaintiff's constitutional claims are not ripe because defendants have not reached a final decision as to whether free-market residential units may be allowed at the Mill Street Plaza if it is redeveloped.  Docket No. 23 at 8.  Defendants point to the city's PD review process, which "allows for site-specific development . . . in circumstances that warrant variation from the standard permitted zone district land uses."  Docket No. 23-1 at 1-2, ¶ 2.  Because plaintiff has not sought PD review of any proposed development plans, defendants argue that plaintiff has failed to obtain a final decision from Aspen as to what development will be permitted at the Mill Street Plaza.  Docket No. 23 at 8-9.  In response, plaintiff argues that, in light of

---

[1] In *Knick v. Township of Scott, Penn.*, 139 S. Ct. 2162 (2019), the Supreme Court overruled the *Williamson County* "state-litigation requirement," which required a property owner to bring a claim for just compensation under state law in state court before bringing a federal takings claim in federal court.  However, the remainder of *Williamson County* remains good law.  *Id*. at 2169 (noting that "the validity of [the] finality requirement . . . is not at issue").  The Court does not read *Knick* to overrule the requirement that a property owner must obtain a final decision before bringing a § 1983 takings claim in federal court.

5

the denial of the rezoning application for Mill Street Plaza, submission of any development plan to the PD review process would be futile. Docket No. 45 at 5-8. Plaintiff argues that defendants' "hands are tied" by a recommendation adopted in the course of denying the rezoning application and are required to deny any PD review application that includes free-market residential development. *Id*. at 9.

Tenth Circuit jurisprudence is instructive. In *Bateman*, the city recorded plaintiff's property as noncompliant with the city's building ordinance, which effectively prevented plaintiff from selling a portion of the property. 89 F.3d at 705-06. Plaintiff subsequently filed a lawsuit rather than seeking a variance from the city's board of adjustment. *Id*. at 706. The Tenth Circuit affirmed the dismissal of plaintiff's Takings Clause claim for ripeness on the basis that plaintiff "fail[ed] to seek review of the City's action under the procedures authorized by state law." *Id*. Although the city determined that plaintiff's current use did not comply with the city's zoning ordinance, that determination was not "conclusive" because it left open the possibility that plaintiff could "obtain[] a variance from the board of adjustment." *Id*. at 708 (citing *Willamson County*, 473 U.S. at 194). Because there was not "a conclusive determination of the property's status," plaintiff failed to show that a final decision had been reached. *Id*. at 707. Similarly, in *Landmark Land Co. of Okla., Inc. v. Buchanan*, 874 F.2d 717 (10th Cir. 1989), *abrogated in part by Fed. Lands Legal Consortium v. United States*, 195 F.3d 1190 (10th Cir. 1999), the Tenth Circuit concluded that plaintiff's Takings Clause claim was not ripe because the city had "neither indicated definitively what level of development will be allowed on [plaintiff's] property, nor finally and officially ruled out the possibility

6

that [plaintiff] will be able to proceed with its original plans." 874 F.2d at 721.[2] The Tenth Circuit noted that the claim would not be ripe until plaintiff was "in a position to allege not only that its initial permit applications were denied, but also that it has made some effort to pursue compromise . . . that would allow some level of development." *Id*.

Applying these precedents, the Court finds that plaintiff has failed to establish that a final decision has been reached that would make its Takings Clause claim ripe. Although the City Council denied plaintiff's application to rezone the Mill Creek Plaza, plaintiff has not sought a zoning variance through the PD review process for a specific plan that it would like to pursue on the property. As a result, plaintiff's claim has not ripened to the point where there has been "a conclusive determination of the property's status." *See Bateman*, 89 F.3d at 707. Similarly, plaintiff has failed to allege that "its initial permit applications were denied [and] that it has made some effort to pursue compromise . . . that would allow some level of development." *See Landmark Land*, 874 F.2d at 721. Indeed, nowhere in its complaint does plaintiff indicate that it has submitted a specific plan for the Mill Street Plaza to defendants that would allow for the pursuit of a compromise. The failure of plaintiff's rezoning application is insufficient to show that defendants have reached a final decision as to the permitted uses of the Mill Street Plaza. *See SK Finance*, 126 F.3d at 1276 (noting that a "final decision" requires more than "an initial rejection of a particular development proposal"). As a result, "the issues and factual components of the dispute" are not "sufficiently fleshed out to permit

---

[2] *Fed. Lands Legal Consortium* abrogated a portion of *Landmark Land*'s analysis regarding a procedural due process claim, leaving the Takings Clause analysis untouched. *See Fed. Lands Legal Consortium*, 195 F. 3d at 1195; *see also SK Finance*, 126 F.3d at 1277 (approvingly citing *Landmark Land*'s Taking Clause holding).

7

meaningful judicial review," which is the purpose of the finality requirement.  *See Bateman*, 89 F.3d at 707.

Plaintiff argues that, because any attempt to use the PD review process would be futile, the denial of the rezoning application acts as the final decision.  Docket No. 45 at 5-11.  The Court rejects this argument.  First, the Tenth Circuit has not clearly indicated that a futility exception to the finality requirement is viable in this circuit.  *See Landmark Land*, 874 F.2d at 722.  However, to the extent that a futility theory is viable, the Tenth Circuit has strongly suggested that "the best support for a claim of futility is . . . unsuccessful pursuit of either a variance or a proposal for less intense development."  *See id*.  Neither of those fact patterns applies to this case, where plaintiff rests its Takings Clause claim on a denial of a petition for rezoning.  The Tenth Circuit has also noted that a futility exception, "under any circumstance, could not be invoked unless it was 'clear beyond peradventure that excessive delay in such final determination [would cause] the present destruction of the property's beneficial use.'" *Dakota Ridge Joint Venture v. City of Boulder*, 162 F.3d 1172 (10th Cir. 1998) (unpublished) (quoting *Landmark Land*, 874 F.2d at 722).  Plaintiff, who has the burden to demonstrate the Court's subject matter jurisdiction, has failed to show that a delay in obtaining a final determination through the PD process would cause the present destruction of the Mill Street Plaza's present beneficial use.  Thus, the futility exception does not apply to this case, and plaintiff's Takings Clause claim is not ripe.[3]

---

[3] Even assuming that the futility exception could apply to the facts of this case, plaintiff fails to show that defendants are bound to deny any use of the Mill Street Plaza that includes free-market residential units.  Plaintiff argues that, in the course of the rezoning application, the City Council adopted the Planning & Zoning Commission's

Plaintiff relies on *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001), to support its argument that defendants have reached a final decision. *See* Docket No. 45 at 9. However, the *Palazzolo* Court described the finality requirement as requiring a landowner to "follow[] reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, *including the opportunity to grant any variances or waivers allowed by law*." 533 U.S at 620-21 (emphasis added).[4] Notably, in *Palazzolo*, the Court deemed plaintiff's claim ripe after he had two separate development applications for his property rejected by the

---

recommendation that "free market residential development . . . is inconsistent" with one or more land use regulatory plans. *See* Docket No. 45 at 7 (citing Docket No. 45-2 at 6). However, the Court is not persuaded that this binds the City Council in the PD review process. In determining whether a planned development may deviate from "allowed uses permitted in the zone district," the City Council must consider whether the proposed use variation "is compatible with the character of existing and planned land uses in the project and surrounding area," "is effectively incorporated into the projects overall mix of uses," "minimizes adverse effects on the neighborhood and surrounding properties," and "complies with applicable adopted regulatory plans." City of Aspen Municipal Code § 26.445.060. Because the City Council is required only to "consider" these standards, the Court does not agree with plaintiff that a prior determination that free-market residential units are incompatible with certain regulatory plans binds the City Council to reject any development proposal made by plaintiff that includes free-market residential units. The Court also notes that the standards applicable to a rezoning application are "more stringent" than those applicable to PD review. *See* Docket No. 23-1 at 3.

[4] Plaintiff suggests that, as a result of *Palazzolo*, "[w]hat constitutes a 'final decision' has evolved since *Williamson County* was decided." *See* Docket No. 45 at 4. Although *Palazzolo* was decided after *Landmark Land*, *SK Finance*, and *Bateman*, the Court does not perceive it as deviating from or overruling previous Tenth Circuit jurisprudence. The Tenth Circuit has only cited *Palazzolo* twice, and in neither case did the Tenth Circuit indicate that it represented a change to the finality requirement. *See VR Acquisitions, LLC v. Wasatch Cty.*, 853 F.3d 1142, 1148-49 (10th Cir. 2017) (contrasting *Palazzolo*'s analysis of ripeness with analysis of prudential standing); *Pater v. City of Casper*, 646 F.3d 1290, 1297 (10th Cir. 2011) (citing *Palazzolo* for the standard for a Takings Clause claim).

9

applicable regulatory agency. *Id*. at 614-15. In this case, plaintiff declined to present a development plan to defendants through PD review, a process which would give the City Council the opportunity to grant a variance for a specific development plan. Thus, *Palazzolo* does not indicate that plaintiff's Takings Clause claim is ripe; it teaches the exact opposite.

Because the Takings Clause claim is unripe, all of plaintiff's claims fall with it. Plaintiff's equal protection and substantive due process claims "rest upon the same facts" as its Takings Clause claim; thus, the ripeness requirement applies and plaintiff's constitutional claims fail. *See Bateman*, 89 F.3d at 709 (collecting cases). Similarly, plaintiff's request for a declaratory judgment relies upon the same facts as the Takings Clause claim. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), applies only to a "case of actual controversy," which means that the act is "limited in a fashion that brings it within the Constitution." *See* 10B Mary Kay Kane, *Federal Practice & Procedure* § 2757 (4th ed. Aug. 2019 update). Because ripeness "bears on the court's subject matter jurisdiction under Article III of the Constitution," the Court concludes that it does not have jurisdiction to enter a declaratory judgment when the underlying Takings Clause claim is not ripe. *See SK Finance*, 126 F.3d at 1275. Finally, plaintiff's cause of action for "reverse spot zoning and/or piecemeal downzoning" does not cite a specific body of law in support of the claim. *See* Docket No. 19 at 17-18, ¶¶ 91-96. However, plaintiff fails to identify any basis for the Court to construe this claim differently from its Takings Clause § 1983 claim. Plaintiff asserts in its complaint that its causes of action may be within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 "to the

10

extent that they are premised upon state laws." *See* Docket No. 19 at 2, ¶ 5. The Court need not determine to what extent plaintiff's claims are premised upon state laws, however, because with the federal questions dismissed the Court sees no compelling reason to exercise whatever supplemental jurisdiction it might be able to exercise. *See Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010) (directing federal courts to "decline to exercise pendent jurisdiction . . . absent compelling reasons to the contrary" if "federal claims are dismissed before trial, leaving only issues of state law") (brackets, internal citations, and internal quotation marks omitted). Thus, the Court will grant defendants' motion to dismiss and will dismiss all of plaintiff's claims without prejudice for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants' Motion to Dismiss [Docket No. 23] is **GRANTED**. It is further

**ORDERED** that all of plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**. It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED March 10, 2020.

          BY THE COURT:

          _____
          PHILIP A. BRIMMER
          Chief United States District Judge